# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

JEREL LAMAR WRIGHT,

        Petitioner,

vs.

JAMES McKINNEY, Warden of the Fort Dodge Correctional Facility,

        Respondent.

No. C15-3103-LTS

**REPORT AND RECOMMENDATION ON PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254**

---

## I.    INTRODUCTION

This matter is before the Court for a decision on the merits of a petition for writ of habeas corpus filed by a state prisoner who claims the State of Iowa violated his constitutional rights. Petitioner, Jerel Lamar Wright, was convicted in 2010 of attempted murder and voluntary manslaughter. Upon review of the record, and having considered the arguments made by the parties in their pleadings, I recommend the District Court deny the petition for the reasons set forth below.

## II.    PROCEDURAL HISTORY OF THIS FEDERAL CASE

On March 24, 2015, Petitioner, an inmate at the Fort Dodge Correctional Facility, filed a pro se petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) and a Motion to Appoint Counsel (Doc. 2). On April 2, 2015, this Court granted Petitioner's motion to appoint counsel (Doc. 3). The Court later granted counsel's motion to withdraw and appointed new counsel (Doc. 7); and, ultimately, ordered Petitioner to either file an amended petition or indicate that he was otherwise proceeding on his original petition (Doc. 21). Petitioner elected to proceed only on the first two grounds articulated

in his petition, and the Court set a briefing schedule (Docs. 21 & 23). After granting multiple continuances of the deadline for Petitioner to file his brief, the Court discharged his attorney and appointed a third attorney (Doc. 31).

On April 22, 2016, Petitioner's third attorney filed an *Anders*-style brief[1] and moved to withdraw as counsel (Docs. 36 & 37). The Court denied the motion to withdraw as premature, and noted that it would consider Petitioner's pro se brief when it resolves the merits of the petition (Doc. 38). On June 17, 2016, Respondent filed his brief (Doc. 40). The time has now expired for the filing of any reply brief. On July 27, 2016, the Honorable Leonard T. Strand, United States District Court Judge, referred this case to me for a Report and Recommendation (R&R).

Upon review of the pleadings and the record, I find that an evidentiary hearing is unnecessary and inappropriate to reach the merits of the petition in this case. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Title 28, United States Code, Section 2254(e)(2), generally bars evidentiary hearings in federal habeas proceedings. Finally, I conclude that oral arguments on the merits of the petition are unnecessary. Therefore, I deem the matter ready for decision.

### III.    FACTUAL  AND PROCEDURAL HISTORY OF THE STATE CASE

The Iowa Court of Appeals previously summarized the relevant facts of the underlying criminal conduct in this case, and the post-conviction litigation in state court, which I find accurate upon my own review of the record.

---

[1] An "*Anders* brief" derives from *Anders v. State of Cali.*, 386 U.S. 738, 744 (1967), where the United States Supreme Court held that after examining the record and concluding that an appeal would be wholly without merit, counsel may file a brief informing the court of any point that arguably might support an appeal, and request permission to withdraw.

On or about September 7, 2009, Wright was involved in a street fight. Two of the participants were stabbed. Der[r]ick Tye was hospitalized as a result of his injuries. Jermaris Lorez West died as a result of the injuries he sustained. Wright was immediately arrested and taken into custody. Wright initially exercised his right to remain silent in response to law enforcement efforts to interrogate him. He was permitted to call his mother, and she told him to tell the officers what he had done. He responded accordingly and admitted stabbing Tye and indicated he had tried to kill him but did not admit to stabbing West. Wright was charged with the attempted murder of Tye and the second-degree murder of West. His statements were admitted into evidence at trial.

While Wright was incarcerated in the Dubuque County Jail he was visited by Sister Rosanna Gleason, acting as a chaplain or chaplain's assistant to the residents of the jail. Wright wrote a letter in which he admitted stabbing Tye and put it in an envelope which he gave to a jailer for delivery to Sister Gleason. The letter did not admit that he stabbed West. The letter was opened by the jail staff and admitted into evidence at trial.

Neither Wright's admissions to the interrogators nor his letter to his assistant chaplain were challenged by a motion to suppress, and both were admitted at trial without objection. Wright and his counsel had determined that he would testify. The evidence was overwhelming that he had stabbed Tye and substantial that he had stabbed West. The blade of the knife recovered at the scene had blood with DNA matching both Tye and West. Wright was found guilty of attempted murder as charged and voluntary manslaughter instead of murder in the second degree. Wright appealed and raised the issue of ineffective assistance of counsel, but the issue was not addressed on appeal and was left open to be considered in a postconviction relief action. *See State v. Wright*, No. 10–1330, 2011 WL 2041578 (Iowa Ct. App. May 25, 2011).

An application for postconviction relief was filed by Wright on November 9, 2011. A hearing was held September 6, 2012. At that hearing Wright's counsel testified that she and Wright made the decision that he would testify in the hope that he would be found not guilty of the second-degree murder charge. His counsel believed Wright would make a good witness and, in fact, believed his testimony was well received. She

believed the fact that Wright was found guilty of voluntary manslaughter instead of second-degree murder vindicated their trial strategy.

*Wright v. State*, 2014 WL 636150, at *1 (Iowa Ct. App. Feb. 19, 2014).

## IV.    STANDARDS FOR SECTION 2254 HABEAS CORPUS RELIEF

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). A federal court will not grant a petition for writ of habeas corpus "unless it appears that –(A) the applicant has exhausted the remedies available in the courts of the State [the exhaustion doctrine]; or (B)(i) there is an absence of available State corrective process; or (B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B). *See also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that under the AEDPA, a petitioner must exhaust state remedies available). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, a state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). The exhaustion doctrine "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Boerckel*, 526 U.S. at 845.

In Iowa, a prisoner must seek review through the "ordinary and established appellate review process" which includes an application for further review in the Iowa Supreme Court. *Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (internal quotation marks and citation omitted) (holding that an Iowa prisoner failed to exhaust his claims in Iowa where his appeal of a state district court's decision to the Iowa Supreme Court was

"deflected to the Iowa Court of Appeals" and he failed to file for further review in the Iowa Supreme Court).

Even when a prisoner's claim has been fully adjudicated in state court, a federal court still may not grant habeas relief unless the state court adjudication:

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). *See Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) ("In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curium) (internal quotation marks and citation omitted). *See also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir. 2015) (holding that under the AEDPA, a federal court can grant habeas relief "only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States.") (internal quotation marks and citation omitted).

"[C]ontrary to . . . clearly established Federal law" as referenced in § 2254(d)(1), means that the "state court arrives at a conclusion opposite to that reached by this [United States Supreme] Court on a question of law, or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority). Circuit

"precedent does not constitute 'clearly established Federal law' . . . ." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (quoting 28 U.S.C. §2254(d)(1)). Federal courts must be deferential in determining if the state court decision was based on "an unreasonable determination of the facts" as described in §2254(d)(2). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The burden is on Petitioner, and it is a heavy one. "The AEDPA standard is difficult to meet as it is intended as 'a guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Nash*, 807 F.3d at 897 (quoting *Harrington*, 562 U.S. at 102-03, and *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

## V.    DISCUSSION

Petitioner argues that he is entitled to relief because his trial counsel was ineffective because she failed to: (1) file a motion to suppress the statements Petitioner gave to the police; (2) file a motion to suppress the letter he sent to Sister Rosanna Gleason; (3) advise Petitioner not to testify; and (4) present a justification defense. I will address each of the first three grounds in turn. Petitioner waived the fourth issue because neither he nor his counsel briefed it. *See Walters v. Maschner*, 151 F. Supp. 2d 1068, 1075 (N.D. Iowa July 11, 2001) (holding that petitioners waive claims not briefed).

Before I turn to each claim of ineffective assistance of counsel, it is helpful, first, to clearly articulate the standard of review. The question before this Court is whether the state court unreasonably applied federal law regarding ineffective assistance of

counsel, or unreasonably found facts from the evidence when it rejected Petitioner's claim that his trial counsel was ineffective. As the Eighth Circuit Court of Appeals has explained:

> Taken together, AEDPA and *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] establish a "doubly deferential standard" of review. First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. The *Strickland* prejudice standard is less demanding than a more-probable-than-not standard, but the difference is "slight and matters only in the rarest case." To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." Under AEDPA, we must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

*Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (internal citations omitted).

Therefore, the operative federal law is the *Strickland* standard for determining ineffective assistance of counsel. Under *Strickland*, counsel is ineffective if a petitioner can show "both deficient performance [by counsel] and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*. A reviewing court's determination of whether counsel's performance was reasonable is highly deferential, for reasons well articulated by the Supreme Court.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks and citations omitted).

To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Strickland*, 466 U.S. at 698.

### A.      Ground One—Motion to Suppress Statements to Police

Petitioner argues his attorney was ineffective for failing to move to suppress the statements he made to police officers. Doc. 36, at 7-8. After his arrest, police questioned Petitioner at the police station. During a session lasting several hours, Petitioner repeatedly told the police that he did not want to talk to them, but they persisted in questioning him. At one point, Petitioner spoke to his mother, who told him to tell the police what happened, and Petitioner then made incriminating statements. Petitioner denied stabbing Jermaris West (who died, and was the basis for the Second-Degree

Murder charge). He stated, however, that he stabbed Derrick Tye and intended to kill him. The stabbing of Tye was the basis for the attempted murder charge. So, Petitioner's statement was at once exculpatory as to his intent to kill West, but incriminating regarding his attempted murder of Tye.

During the state habeas proceeding, Petitioner's trial counsel testified that she reviewed Petitioner's videotaped interview with the police and believed the interview was "a violation of *Miranda*," meaning that it violated Petitioner's constitutional right to remain silent. Doc. 25-6, at 47. She also believed, however, that the statement was voluntary, such that if Petitioner testified, the government could use the statements against him to impeach his testimony on cross examination. *Id*. Trial counsel researched the issue and considered all of the factors set forth in the case law pertaining to whether a court would find his statements voluntary. Doc. 25-6, at 57. Trial counsel concluded, however, that "in order to present the defense that he wanted to present, and that I believed would be to his best advantage to present, that his testimony would be essential." Doc. 25-6, at 46. Trial counsel discussed with Petitioner that although the strategy would help regarding Murder Second charge, it would permit the government to use his statements against him, which would hurt his chances on the attempted murder charge. Doc. 25-6, at 58-59. After consulting with his trial counsel, Petitioner decided to testify at his trial and expressed a desire to do so. Doc. 25-6, at 46, 57-58.

Trial counsel believed Petitioner's testimony to be "central to the presentation of his defense," particularly with regard to the most serious charge of second degree murder. Doc. 25-6, at 45. She testified that the only way to negate the intent to kill West was for Petitioner to testify. Doc. 25-6, at 46, 49, 58. Trial counsel was of the opinion that Petitioner would make a good witness. Doc. 25-6, at 50. Accordingly, trial counsel testified that she made the strategic decision that there was no benefit to filing a

motion to suppress because once Petitioner testified, the state could introduce the statements to impeach him. Doc. 25-6, at 51. Trial counsel did not have a specific memory of discussing with Petitioner the question of whether to file a motion to suppress, but believed she did, and said it would have been her practice to do so. Doc. 25-6, at 56. Petitioner testified that trial counsel did not discuss with him the possibility of filing a motion to suppress the statements. Doc. 25-6, at 25.

Trial counsel's strategy appears to have worked. Doc. 25-6, at 53. Trial counsel believed Petitioner made a very good witness. Doc. 25-6, at 52. The jury acquitted Petitioner on the more serious charge of Murder Second and convicted him of the lesser-included offense of voluntary manslaughter. Doc. 25-6, at 53. Trial counsel believed Petitioner's testimony was the decisive factor in that verdict. Doc. 25-6, at 53-54.

In evaluating Petitioner's ineffective assistance of counsel claim on this ground, the Iowa Court of Appeals appears to have presumed that the police violated Petitioner's Fifth Amendment right to remain silent when they continued to questions him after he advised them he did not want to talk. *Wright*, 2014 WL 636150, at *2. With that assumption in mind, the Iowa Court of Appeals evaluated whether trial counsel was ineffective. Looking at the performance prong, the Iowa Supreme Court determined that Petitioner's statements would have been admissible against him on impeachment grounds. *Id*. The state court credited trial counsel's testimony that it was a strategy decision to have Petitioner testify and not file a motion to suppress the statements. *Id*. As to the prejudice prong, the state court stated that Petitioner was "objecting to the admission of evidence which one way or another would have been before the jury" as a result of his decision to testify. *Id*. at *3.

Under the doubly deferential standard by which the Court must review this case, I cannot conclude that the state court unreasonably applied federal law or unreasonably

found facts from the evidence when it rejected Petitioner's claim that his trial counsel was ineffective. The state court was correct that voluntary statements made by a defendant under circumstances violating the defendant's *Miranda* rights are admissible for impeachment if their "trustworthiness … satisfies legal standards." *Mincey v. Arizona*, 437 U.S. 385, 397-98 (1978) (internal quotation marks and citation omitted). That is because "the shield provided by *Miranda* is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances." *Oregon v. Hass*, 420 U.S. 714, 722 (1975). It was not objectively unreasonable, then, for the Iowa Court of Appeals to conclude that trial counsel was not ineffective for deciding not to move to suppress Petitioner's statement when they would have been admissible to impeach his testimony in any event. *See Rhoades v. Dormire*, No. 4:11-CV-1388-SPM, 2014 WL 4823884, at *13-14 (E.D. Mo. Sept. 26, 2014) (holding that the state court did not err in finding trial counsel was not ineffective for failing to file a motion to suppress statements when the petitioner testified and the state could have introduced the statement to impeach him).

There is a difference, however, regarding the use of Petitioner's statements as substantive evidence of guilt and their use only for purposes of impeachment. Petitioner's statements to the police would have been admissible only if they were inconsistent with his trial testimony and only for the purpose of impeachment. *United States v. Issaghoolian*, 42 F.3d 1175, 1177 (8th Cir. 1994). Further, if the statements were admitted only for purposes of impeachment, the trial court should have instructed the jury that it could not use those statements as substantive evidence of guilt. *United States v. Shurn*, 183 Fed. App'x 598, 603 (8th Cir. 2006) (unpublished).

The finer question in assessing trial counsel's performance, therefore, is whether she should have moved to suppress the statements, regardless of whether she concluded

that they may still have been used by the government for purposes of impeachment. Trial counsel could have determined if Petitioner's trial testimony would have been inconsistent with his statements to the police and considered the effect a limiting instruction would have had on the jury. A better practice, therefore, would have been for trial counsel to have moved to suppress the evidence. If the motion was granted, then the government could not have used statements in its case-in-chief. After Petitioner testified, then trial counsel could have asked the court to limit the government's use of Petitioner's statements on cross examination only to those portions of Petitioner's statements that the court found were inconsistent with his trial testimony. Trial counsel could have also requested the court provide the jury with a limiting instruction, restricting its use of the statements to impeachment only. Although the jury may have still been exposed to some of Petitioner's statements, they may not have been exposed to all of them, the statements would not have come in as part of the government case, and the jury would have been limited in its use of those statements.

Petitioner is not, however, entitled to perfect counsel. *See Harrington*, 562 U.S. at 110 ("*Strickland* does not guarantee perfect representation, only a 'reasonably competent attorney.'") (quoting *Strickland*, 466 U.S. at 687, in turn quoting *McMann v. Richardson*, 397 U.S. 759, 770 (1970)). Trial counsel undoubtedly made a reasonably competent strategy call. She judged that having Petitioner testify was worth the cost of having the statements come into evidence. That she failed to appreciate that she may have had an opportunity to have Petitioner testify, while simultaneously minimizing the scope and impact of the statements, does not mean that her performance fell below the level of Sixth Amendment effective assistance of counsel. The Iowa Court of Appeals found that strategy call did not constitute defective performance by trial counsel; and, I cannot conclude that in making that judgment, the state court misapplied the law.

In any event, regarding the prejudice prong, Petitioner cannot demonstrate that the outcome of the case would have been different had trial counsel successfully moved to suppress his statements. Petitioner made no showing that his trial testimony was not inconsistent with the statements he made to the police, and therefore, did not show that some of his statements would have been inadmissible even for purposes of impeachment. Nor did Petitioner demonstrate that the fact the jury heard the statements as substantive evidence, instead of for the limited purpose of impeachment, would have altered the outcome of the case. The Iowa Court of Appeals found "[t]he evidence was overwhelming that [Petitioner] had stabbed Tye and substantial that he had stabbed West." *Wright*, 2014 WL 636150, at *1. At trial, the government presented evidence that the fight arose out of a history of altercations attributable to allegations that Petitioner had a sexual relationship with Tye's pregnant girlfriend. Doc. 25-1[2], at 67-68, 87-90, 220-21, 231-32, 249. Petitioner chased Tye, jumped on top of him, and had to be forcibly pulled off of him. Doc. 25-8[3], at 50-51, 54-56. Multiple witnesses saw Petitioner with a knife in his hands. Doc. 25-8, at 20, 25, 41-42, 50. Eye witnesses saw Petitioner stab Tye. Doc. 25-8, at 20, 25, 50. Dr. Joseph Jenkins testified that one of Tye's injuries was the result of a stabbing or thrusting motion, not a glancing blow. Doc. 25-8, at 28-29. Dr. Jenkins testified another injury was so forceful that it chipped away part of Tye's skull. Doc. 25-8, at 26-28. Tye's blood was found all over the knife, not just on the tip of the blade. Doc. 25-8, at 58-62. The admission of Petitioner's statements to the police did not cause him prejudice as to the Murder Second charge involving West because Petitioner made no incriminating statement to the police about stabbing West. In fact, at

---

[2] Citing to the pagination as provided by the appendix.

[3] Citing to the pagination as provided by the appendix.

trial, Petitioner testified that he saw another person stab West. Doc. 25-8, at 63. Therefore, given the overwhelming evidence against Petitioner as to the attempted murder of Tye, I cannot conclude that the state court erred in finding Petitioner was not prejudiced by the admission of his statements to the police.

### B. Ground Two— Motion to Suppress Letter to Sister Gleason

Petitioner argues his trial counsel was ineffective for failing to move to suppress admissions he made in a letter he attempted to pass to a nun, Sister Rosanna Gleason. Doc. 36, at 8-9. The nun was not an ordained member of the clergy. Doc. 25-6, at 14. She visited inmates at the Dubuque County Jail to provide them comfort. *Id.*, at 12. Petitioner attempted to pass a letter to the nun by providing it to a staff member, but the staff opened and read the letter instead. *Id.*, at 17-19. Trial counsel believed the letter contained both favorable and unfavorable information for Petitioner. *Id.*, at 59-60. It portrayed Petitioner as a devoted father and a hard worker. Doc. 25-7. It suggests he was a victim of Tye's jealousy and aggression. *Id.* Petitioner admitted in the letter that he stabbed Tye, but he denied intending to kill anyone and said the stabbing was justified as being in defense of another person. *Id.* Trial counsel testified that she made a "tactical decision" not to file a motion to suppress to keep the letter out of evidence because she concluded there was "a tradeoff between information that is unfavorable in the letter and information that is favorable in the letter." Doc. 25-6, at 60.

The state district and appellate courts found, under Iowa law, that the letter would have been admissible even if counsel had filed a motion to suppress. Doc. 25-8, at 106 (district court found the letter was not intended to be confidential, and receipt of the letter was not part of the nun's duties); *Wright*, 2014 WL 636150, at *3 (appellate court found Petitioner waived any privilege when he testified). Those decisions did not involve the

application of federal law, and therefore, are not subject to review by this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Regardless of whether the state court correctly determined the admissibility of the letter, trial counsel's decision not to move to suppress the letter did not constitute ineffective assistance of counsel. It is not clear from the Iowa Court of Appeals' decision that the court explicitly determined whether trial counsel was ineffective in failing to move to suppress the letter. The Iowa Court of Appeals did find that admission of the letter was "part of what turned out to be a partially successful trial strategy" because the letter "simply confirmed [Petitioner's] own testimony." *Wright*, 2014 WL 636150, at *3. Further, it found that Petitioner "is now objecting to the admission of evidence which one way or another would have been before the jury as a result" of his decision to testify, which impliedly addressed the issue of prejudice. *Id*. My own review of the record shows that trial counsel made a strategic decision to not object to admission of the letter on the reasonable belief that there was as much to gain from its admission as there was to lose. Therefore, I find that trial counsel's performance was not constitutionally deficient.

In any event, Petitioner has not demonstrated that he was prejudiced by admission of the letter. Indeed, in the letter, Petitioner denied the intent to murder Tye and proffered a justification for stabbing him, so it was exculpatory with regard to Petitioner's *mens rea*. As discussed above, the evidence that Petitioner stabbed Tye was overwhelming. The letter did not implicate Petitioner in the murder of West, so again, its admission could not have been prejudicial to Petitioner with regard to the Murder Second charge. Therefore, Petitioner failed to show a reasonable probability that, but for admission of the letter, the result of the trial would have been different.

Accordingly, I find that the state court did not err regarding trial counsel's failure to move to suppress the letter.

## C.      Ground Three—Advice Whether to Testify

In a pro se brief in support of his petition, Petitioner argued that his trial counsel was ineffective for failing to advise him not to testify. Doc. 1-1, at 23-43. Petitioner argues that his attorney should have advised him not to testify because, by testifying, it allowed the admission of his incriminating statements to the police.

This argument is functionally equivalent to claimant's first argument that trial counsel was ineffective for failing to move to suppress the statements. For the reasons explained above, trial counsel's advice for Petitioner to testify, even knowing it would open the door to admission of his statements to police, was part of a reasonable trial strategy, and therefore, did not constitute deficient performance. Also for the reasons stated above, Petitioner has not shown that, but for admission of those statements, the outcome of his trial would be different, given the overwhelming evidence that he stabbed Tye.

To the extent Petitioner maintains that this argument is somehow qualitatively different from his first argument, then he is procedurally barred from arguing it now because he did not present it to the state court. As previously noted, "[b]efore a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, a state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *Boerckel*, 526 at 842. To exhaust a claim in state court, a petitioner must generally reference a specific constitutional right or section, or "a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."

*Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010). A review of the state court pleadings reveal that Petitioner did not make this claim of ineffective assistance of counsel in state court.

In any event, Petitioner's attorney's decision to proceed only on the first two grounds effected a waiver of any other grounds raised in the petition. *See Smith v. Murray*, 477 U.S. 527, 534-35 (1986) (holding that "a deliberate, tactical decision not to pursue a particular claim" constitutes a waiver of that claim). In the context of habeas corpus litigation, a petitioner waives a claim when, through counsel, he does not include the claim in a brief on the merits. *See*, *e.g.*, *Harper v. Nix*, 867 F.2d 455, 457 (8th Cir. 1989) (finding petitioner's attorney's tactical decision not to brief claims raised in the petition constituted an abandonment of those claims); *Walters*, 151 F. Supp. 2d at 1075 (finding petitioner's counsel's failure to brief or present argument or evidence pertaining to a claim constituted an abandonment of that claim).

Finally in the conclusion of his pro se brief, Petitioner argues he is entitled to relief through the cumulative effect of error, even if individual claims of error do not entitle him to relief. Doc. 1-1, at 40. Respondent argues that the cumulative error analysis is not available, citing *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996). Doc. 40, at 27. This Court has previously held, however, that when a petitioner argues that his counsel was ineffective in several related instances, the court may consider the cumulative effect of the instances together. *Johnson v. United States*, 860 F. Supp. 2d 663, 765 (N.D. Iowa 2012). Here, though, I find trial counsel was not ineffective in any respect, and therefore, Petitioner's cumulative error argument is moot.

## VI.    *CONCLUSION AND RECOMMENDATION*

I find the state court's decision that Petitioner was not denied effective assistance of counsel was not contrary to, or involved an unreasonable application of, federal law. Therefore, for the reasons set forth above, I recommend the District Court **dismiss with prejudice** Petitioner's habeas corpus petition.

Objections to this R&R must be filed within fourteen (14) days of the service of a copy of this R&R.  28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b).  Objections must specify the parts of the R&R to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* FED. R. CIV. P. 72.  Failure to object to the R&R waives the right to *de novo* review by the district court of any portion of the R&R as well as the right to appeal from the finding of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 27th day of October, 2016.

_____

C.J. Williams
United States Magistrate Judge
Northern District of Iowa